## Forepaugh, Bishop, &c. *vs.* Appold & Sons

### APPEAL FROM FAYETTE CIRCUIT.

Case 21.

Pet. Eq.

17bm625
109  27

1. An assignment of "all estate, of whatever nature or kind soever," will pass the debts due on account to the assignor, and everything else in the form of property owned by him.
2. An assignment of a debt due by account, does not pass the legal right to the debt, but only an equitable right.
3. In a contest between equitable rights, the elder will prevail.
4. An unrecorded deed of trust, or mortgage, will prevail against a creditor who has notice thereof, before he acquires a legal right.
5. A garnishee, who is adjudged to pay a debt to an attaching creditor, has the right to appeal from such judgment.
6. Where the affidavit of a garnishee, and that of his creditor, shows that the money sought to be recovered of the garnishee belongs to one not party to the suit, it is notice to the plaintiff, and the court should require such owner to be brought before the court. (*Code of Practice, sec.* 40.)

Appold & Sons, residing in Baltimore, brought suit by ordinary petition, and sued out an attachment from the Fayette circuit court, in March, 1853, against William F. Forepaugh, a citizen of Philadelphia, and summoned Purnell Bishop, of Lexington, Kentucky, as garnishee, attaching in the hands of Bishop a debt due to Forepaugh on an open account.

FOREPAUGH, &c.
*vs.*
APPOLD, &c.

A judgment was rendered against Forepaugh for about $380, interest and costs, which Bishop was compelled to pay. The bond required by law was executed to Forepaugh on suing out the attachment, with the proper condition to refund the money if the defendant should in proper time appear and set aside the judgment, &c. In February, 1855, J. F. Forepaugh filed his petition, claiming to be entitled to the money which was attached in the hands of Bishop, in virtue of an assignment made on the 26th day of February, 1853, by William F. Forepaugh, in the city of Philadelphia, and there duly recorded in the proper office, but not in Kentucky, averring that the defendant, however, had actual notice of such assignment before suing out his attachment. Upon the filing of the petition the case was re-docketed, and a verdict rendered for the plaintiff; a new trial moved for and overruled, and an appeal prayed by defendants.

*Carr & Kinkead* for appellants—

The suit was brought upon an acceptance which was payable at the Girard Bank, Philadelphia, maturing and protested on the 10th February, 1853. It appeared in evidence that the plaintiff knew that Forepaugh, the defendant, had failed before he sent his claim to Lexington for suit, and had written to Lexington to ascertain if Bishop was not indebted to W. F. Forepaugh, and on learning that he was, the attachment shortly thereafter was sued out. The deed of assignment was read to the jury. And the defendant moved the court to instruct the jury that if they believed from the evidence that the defendant had made the deed of trust, and the same was duly recorded in the proper office, conveying all his property, including the debt of Bishop, to a trustee, prior to the suing out and levy of the attachment, they should find for the defendant. This instruction was refused by the court.

Two questions arise on the facts, instructions and opinion of the court:

1. Did the *choses in action* of the grantor pass by the deed of trust, of which the claim on Bishop was one ?

2. If the claim on Bishop did pass, was not the recording of the deed in Philadelphia, in the proper office, constructive notice thereof to the plaintiffs ? Or was it necessary to pass the equitable right to the debt on Bishop that the deed should have been recorded in Kentucky ?

1. On the first point we suppose there can be no doubt the terms, "all his estate of whatever kind and nature soever," comprehends all his rights, according to the understanding of men in general, and by that rule it should be tested. The grantee is also appointed to sue for, receive and receipt for all money due and owing to him, the grantor. (*Hammond vs. Hammond*, 8 *Gill & Johnson*; 2 *Desau.* 573; *Ib.* 422; 3 *Litt.* 415; 7 *B. Monroe*, 14.)

2. The inference is very clear that the appellees had notice of the assignment made by W. F. Forepaugh before bringing their suit, as they resided in Philadelphia, where it was made and recorded, and they were bound to take notice of it; and as there was evidence conducing to show actual notice, and there was constructive notice, the instruction asked by defendant should have been given. But we rely that it was not necessary to give validity to the assignment of a *chose in action*, that it should be recorded in Kentucky, where the debtor resided, the parties to the assignment residing in Pennsylvania. The intimation in *Stewart vs. Hall*, 3 *B. Monroe*, 221, is repeated in *Van Meter vs. McFadden*, 8 *Ib.* 442, and *Bank U. S. vs. Huth*, 3 *Ib.* 443. The assignment of an account passed an equitable right to J. F. Forepaugh, and Appold & Sons had notice, by Bishop's affidavit of the right of the assignee before he acquired anything but **an** equity, which is junior to that of J. F. Forepaugh.

FOREPAUGH, &C.
       vs.
APPOLD, &C.

M. C. *Johnson* and C. C. *Rogers* for appellees—

Appold & Sons holding an acceptance for $321 41 on W. F. Forepaugh, sued him in an ordinary action for its amount, and attached a debt due by P. Bishop to Forepaugh, for its payment. Forepaugh was constructively summoned, and judgment rendered in favor of Appold & Sons. The proceedings up to this point were all regular—affidavits duly filed—warning order made—corresponding attorney appointed, and bonds, with good security given.

Afterwards, W. F. Forepaugh appeared and answered, and the case was opened. He does not deny the debt to Appold & Sons, but admits it. His only defense is that he had assigned to a trustee the debt due by Bishop.

As all subsequent proceedings were taken on this answer; it may be proper to inquire if it presents any ground for setting aside the judgment.

By this answer the judgment, as against Forepaugh, is admitted to be correct. The only objection is to the judgment against P. Bishop—and the objection is that Bishop did not owe him anything—that he had assigned it away. Admitting this to be true, how is W. F. Forepaugh prejudiced or injured? He is actually benefited, if he speaks truly, by having his *bona fide* debt paid out of a fund which belongs to another. It is to us, therefore, manifest that W. F. Forepaugh cannot set aside the judgment rendered against him, admitting all the statements of the answer to be true.

It may be asked, what remedy has the assignee in such a case as this? The remedy of the assignee is to sue Bishop, or Appold & Sons, for the money. Not being a party to the judicial proceedings, he is not bound or precluded by them, and can sue either Bishop or Appold & Sons. In this case the assignee files a petition to be made a party, but no action seems to have been taken upon the petition.

He was not made a party—no issue was made between him and Appold & Sons, or any one else.

On the trial, simply a verdict and judgment were rendered against W. F. Forepaugh for the amount of Appold's debt, and that judgment is conceded to be right.

The circuit court, from the bill of exceptions, and the opinion of the court in overruling the motion for a new trial, seems to have tried the question of the rights of the assignee—but how it was tried we are unable to see.

If this court can discover a mode by which this trial was properly sustained, as a proper investigation into the respective rights of Appold & Sons and the assignee, then in addition to the reasons stated by the circuit judge for the correctness of his rulings at the trial, we would suggest that the assignment of the debt did not pass the legal title of W. F. Forepaugh to the debt on P. Bishop, that debt being a mere account. If, therefore, Appold & Sons, without notice of the mere equity passed to the assignee or trustee, obtained by their attachment and judgment the *legal* right to this debt, he will not afterwards be disturbed by the mere holder of an equity.

Without, therefore, discussing the various decisions of this court on the subject of mortgages of *choses in action*, when the mortgage does not transfer the legal title, but only an equity in the *chose in action*, that equity is subject to the general disadvantages of all equities when opposed to the legal title. The attachment, followed by judgment, vests in Appold & Sons the legal title, of which they cannot be deprived by a mere equity, unless that equity is accompanied by notice, as required by the instruction of the court to the jury.

Judge SIMPSON delivered the opinion of the court:

The assignment made by Forepaugh to his creditors, transfers, in express terms, "all his *estate* of whatever kind or nature soever," to the trustee. If his

FOREPAUGH, &c.
vs.
APPOLD, &c.

December 4.

1. An assignment of "all estate of whatever nature or kind soever,"

will pass the debts due on account to the assignee, and every thing else in the form of property owned by him.

*choses in action* constituted a part of his estate, they were embraced by the deed. The word *estate* was not used in this instrument, in its technical sense, to denote the quantity of interest which the grantor had in the property conveyed, but it was used according to its popular signification, to describe the property and *things* which were intended to be transferred by the deed. All the grantor's *estate* of every description, most clearly included the debts due to him, and every thing else in the form of property that belonged to him. Such is the undoubted meaning of this expression according to its general acceptation. Consequently the debt on Bishop passed to the trustee by the deed of assignment.

2. An assignment of a debt due by account does not pass the legal right to the debt, but only an equitable right.

It does not appear by anything contained in the record, whether a debt due by account, according to the laws of Pennsylvania, where the parties resided, and the deed of trust was executed, is or not assignable so as to vest the legal title to it in the assignee. Under our laws, only an equitable right to the debt, in such a case, passes to the assignee. And as it has not been shown that any other right to it was transferred by the deed under the operation of the law of Pennsylvania, the trustee will be regarded as being only invested with an equitable right to it.

The deed of assignment, although regularly recorded in the city of Philadelphia, where the parties resided, does not appear to have been recorded in this state. If, under such circumstances, it should be regarded as a valid recorded instrument, as to the debts due to the grantor in this state, then there could be no contest in this case with respect to the rights of the parties as to the debt due from Bishop. But if it can have no other effect here than an unrecorded deed, then the question arises, is the equity of the trustee valid against an attaching creditor, who has notice of it, before he recovers a judgment for the money, and thus acquires a legal right to the thing in contest.

The doctrine is well settled, that in a contest between equities merely, that which is prior in time must prevail. An attaching creditor only acquires a lien upon, or an equitable right to, the money in the hands of a garnishee, by bringing his action, and delivering the order of attachment to the sheriff. The right he thus acquires is subordinate to that of an assignee of the debt, whose right was created before the commencement of the action, and of the existence of which the attaching creditor shall be apprised before he obtains a judgment for the money. In this case, although the claim of the creditors, under the assignment, was not asserted by the trustee before the plaintiffs obtained a judgment against Bishop, yet they were fully informed of their right to the debt by the affidavit which the garnishee filed in the cause.

An unrecorded deed of trust, or mortgage, will, in equity, prevail even against a creditor who has notice of it, before he acquires a legal right to the property or estate embraced by it. (*Swigert vs. Bank of Kentucky and others, ante, page* 268.)

The trustee, therefore, was entitled to the debt due by Bishop, whether the deed of trust should or not, so far as the debts in this state were concerned, be regarded as a recorded instrument.

But it is contended that the trustee was not made a party to the action in the court below, although he filed a petition for that purpose, and cannot, therefore, prosecute an appeal; and as the grantor in the deed of assignment is not prejudiced by the judgment, that it cannot be reversed at his instance.

The garnishee, however, is an appellant, and, being prejudiced by the judgment, has a right to complain of it. The non-resident defendant having appeared and filed an answer, by which it appeared that the debt on Bishop did not belong to him when the plaintiffs commenced their action, but had been assigned away for the benefit of his creditors, it was the duty of the court, upon the facts alledged and

FOREPAUGH, &c.
vs.
APPOLD, &c.

3. In a contest between equitable rights, the elder will prevail.

4. An unrecorded deed of trust, or mortgage, will prevail against a creditor who has notice thereof, before he acquires a legal right.

5. A garnishee, who is adjudged to pay a debt to an attaching creditor, has the right to appeal from such judgment.

FOREPAUGH, &c.
vs.
APPOLD, &c.

proved, to have set aside the former judgment against Bishop, upon the re-trial, and to have adjudged the repayment of the money by the plaintiffs in the action, if it had been collected by them. As, however, the pleadings did not show that it had been paid, the court could only have set aside the previous judgment.

As Bishop would be responsible to the trustee for the debt, notwithstanding he had paid it to the plaintiffs in pursuance of the judgment of the court, inasmuch as he had knowledge of the assignment before the judgment was rendered against him, he has a clear right to prosecute an appeal to have the judgment reversed, and such a judgment rendered as will relieve him from this double liability for the same debt.

6. Where the affidavit of a garnishee, and that of his creditor, shows that the money sought to be recovered of the garnishee belongs to one not party to the suit, it is notice to the plaintiff, and the court should require such owner to be brought before the court. (Code of Practice, sec. 40.)

The court below should have made an order requiring the trustee to be made a party to the action, not only because he had filed a petition for that purpose, but also because the controversy between the parties before the court could not be properly determined without he was made a party. (*Code of Practice, sec.* 40.)

Wherefore, the judgment is reversed, and cause remanded for further proceedings not inconsistent with this opinion.